IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
NORTHERN DIVISION

| | | |
|---|---|---|
| S2 ACQUISITION, LLC | § | |
|     Plaintiff | § | |
| | § | |
| V. | § | |
| | § | |
| CLAYTON ISOM, JOHN SELLERS and | § | |
| RASHID AL-HMOUD | § | |
|     Defendants | § | |
| | § | |
| V. | § | CASE NO. 11-CV-143 |
| | § | |
| SPECIALTY FINANCE GROUP, LLC; | § | |
| FEDERAL DEPOSIT INSURANCE | § | |
| CORPORATION AS RECEIVER FOR | § | |
| SILVERTON BANK, N.A.; and FEDERAL | § | |
| DEPOSIT INSURANCE CORPORATION | § | |
| AS RECEIVER FOR SILVERTON | § | |
| BRIDGE BANK, N.A. | § | |
|     Third-party Defendants | § | |

**DEFENDANTS CLAYTON ISOM'S AND RASHID AL-HMOUD'S
ORIGINAL ANSWER AND COUNTERCLAIM AND THIRD-PARTY CLAIM**

Defendants CLAYTON ISOM and RASHID AL-HMOUD (collectively "Defendants") file this Original Answer and Counterclaim and respectfully show the Court as follows:

**A. Admissions and Denials**

1. Defendants admit the allegations in paragraph 1.

2. Defendants admit the allegations in paragraph 2.

3. Defendants deny the allegations in paragraph 3. The correct address is 3003 23rd Street, Lubbock, Texas 79410.

4. Defendants lack sufficient knowledge or information to form a belief about the truth of the allegations in paragraph 4.

5.  Defendants admit the allegations in paragraph 5.

6.  Defendants admit the allegations in paragraph 6.

7.  Defendants lack sufficient knowledge or information to form a belief about the truth of the allegation that Specialty Finance Group LLC is a Georgia limited liability company but admits the remaining allegations in paragraph 7.

8.  Defendants deny that Sellers is a limited partner of ICS Investment Group, LP. Defendants further deny that ICS Investment Group, LP is the sole managing member of Tao Development Group, LLC but admit the remaining allegations in paragraph 8.

9.  Defendants admit the allegations in paragraph 9.

10. Defendants admit the allegations in the first two sentences of paragraph 10 but lack sufficient information to form a belief about the truth of the allegations contained in the last sentence of paragraph 10.

11. Defendants admit the allegations in paragraph 11.

12. Defendants admit the that the words in quotation marks in paragraph 12 appear in the Guaranty Agreement attached as Exhibit C to the Plaintiff's Complaint but deny that these words alone represent the terms and conditions contained within the four corners fo the Guaranty Agreement.

13. Defendants lack sufficient knowledge or information to form a belief as to the allegation that the Guaranty attached as Exhibit C to the Plaintiff's Complaint requires Defendants to pay all out-of-pocket expenses and denies that the remaining allegations represent all the terms and conditions within the four corners of the Guaranty Agreement.

14. Defendants lack sufficient knowledge or information to form a belief about the truth of paragraph 14.

15. Defendants deny the allegations in paragraph 15.

16. Defendants admit S2 Acquisition sent a demand letter to Defendants with the noted dollar figures included, but denies the remaining allegations in paragraph 16.

17. Defendants deny the allegations in paragraph 17.

18. Defendants lack sufficient knowledge or information to form a belief about the truth of paragraph 18.

19. Defendants lack sufficient knowledge or information to form a belief about the truth of paragraph 19.

20. Defendants lack sufficient knowledge or information to form a belief about the truth of paragraph 20.

21. Defendants admit the allegations in paragraph 21.

22. Defendants admit that they are not in bankruptcy and that the borrower did file bankruptcy but deny the remaining allegations in paragraph 22.

23. Defendants deny the allegations in paragraph 23.

24. Defendants repeat and re-allege Paragraphs 1-23 of its Original Answer as if fully set forth herein.

25. Defendants deny the allegations in paragraph 25.

26. Defendants deny the allegations in paragraph 26.

27. Defendants deny the allegations in paragraph 27.

28. Defendants deny the allegations in paragraph 28.

29. Defendants admit that they executed and delivered the Guaranty Agreement attached as Exhibit C to Plaintiff's Complaint but deny that the remaining allegations standing alone represent the complete terms and conditions found within the four corners of the Guaranty Agreement.

30. Defendants deny the allegations in paragraph 30.

31. Defendants admit S2 Acquisition sent a demand letter and that Defendants have not paid S2 Acquisition but deny the remaining allegations in paragraph 31.

32. Defendants deny the allegation in paragraph 32.

## B. Affirmative Defenses

33. Defendants are not liable to Plaintiff under the following affirmative defenses:

    a. By its conduct and failure to comply with its contractual obligations owed to the Debtor and Defendants, Plaintiff is estopped to assert the causes of action asserted by Plaintiff in its complaint.

    b. By its unclean hands resulting from its conduct and failure to comply with its contractual obligations to the Debtor and Defendants.

    c. By failure of consideration resulting from Plaintiff's failure to perform its contractual obligations owed to Debtor and Defendants.

    d. By the impossibility of performance caused by Plaintiff's conduct and resulting from Plaintiff's failure to perform its contractual obligations owed to Debtor and Defendants.

e. By the breach of contract by Plaintiff that discharged any subsequent obligation by Debtor and Defendants to perform their obligations otherwise owed pursuant to the terms and conditions of the Guaranty Agreement and/or Loan Documents.

f. By its conduct and failure to comply with its contractual obligations owed to the Debtor and Defendants, Plaintiff waived the causes of action asserted by Plaintiff in its complaint.

g. By its failure to mitigate resulting from Plaintiff's failure to perform and comply with its contractual obligations.

h. By its failure to comply with conditions precedent under its contractual obligations.

i. By its attempt to collect default interest that amounts to a penalty and is usurious.

j. By its conduct and failure to comply with its contractual obligations owed to the Debtor and Defendants, thereby entitling Defendants to a claim of recoupment and set-off.

k. The underlying obligations were materially modified or altered which the Guarantors of the obligation to guarantee performance of the loan documents.

l. The Loan Agreement was not followed strictly and this suit is an attempt to extend the Guaranty Agreement beyond its precise terms by construction or implication.

m. The originating bank breached its duty of good faith, fiduciary duty, and obligation to disclose by failing to inform Defendants of the financial status of the originating bank and its likeliness of defaulting under its primary obligations to Defendants. These facts were probative of material risks to the Defendants. These facts materially increased Defendants' risks, and the originating bank had adequate time to disclose

    these facts but failed to due so, thus relieving Defendants of their obligations under the Guaranty Agreement.

  n. The creditor's active negligence or misconduct (i.e. failure to fund the loan per its terms) has significantly impaired the value of the collateral which discharged Defendants' obligations.

  o. Defendants' liability cannot exceed the principal's liability.

  **C. Defendants' Original Counterclaim and Third-Party Claim**

Defendants file this Counterclaim and Third-Party Claim against S2 ACQUISITION, LLC, SPECIALTY FINANCE GROUP, LLC, FEDERAL DEPOSIT INSURANCE CORPORATION AS RECEIVER FOR SILVERTON BANK N.A., and FEDERAL DEPOSIT INSURANCE CORPORATION AS RECEIVER FOR SILVERTON BRIDGE BANK, N.A. and respectfully show the Court as follows:

**a. Parties**

34. SPECIALTY FINANCE GROUP, LLC is a Georgia limited liability company with its principal place of business located at 3284 Northside Parkway, N.M., Atlanta, Georgia 30327 and may be served with process through its designated agent for service of process, CT Corporation System (Atlanta), 1201 Peachtree Street, NE, Atlanta, GA 30361.

35. FEDERAL DEPOSIT INSURANCE CORPORATION AS RECEIVER FOR SILVERTON BANK, N.A. ("FDIC-R-BANK") is a governmental entity organized under the laws of the United States of America with its principal place of business located in Washington, D.C. and may be served with process through its designated agent for service of process, Executive Secretary (or designee), FDIC, 550 17th Street N.W., Washington, D.C. 20429.

36. FEDERAL DEPOSIT INSURANCE CORPORATION AS RECEIVER FOR SILVERTON BRIDGE BANK, N.A. ("FDIC-R-BRIDGE") is a governmental entity organized under the laws of the United States of America with its principal place of business located in Washington, D.C. and may be served with process through its designated agent for service of process, Executive Secretary (or designee), FDIC, 550 17th Street N.W., Washington, D.C. 20429.

**b.   Factual Background**

37. Tao-Sahi, LP (the "Debtor") developed a hotel in San Antonio. In April of 2008, the Debtor closed a $18,633,336.00 secured construction loan with Specialty Finance Group, LLC ("SFG"), a subsidiary of Silverton Bank N.A. ("Silverton"). Incident to that transaction, the Debtor executed a Promissory Note dated April 16, 2008 to the order of SFG ("Promissory Note"), and a Loan Agreement, also dated April 16, 2008 ("Loan Agreement"), among other related documents (collectively, the "Loan Documents"). Rashid Al-Hmoud, Clayton Isom, and John Sellers executed a personal guaranty in favor of SFG in the form of Exhibit C attached to Plaintiff's Complaint. The guaranty acknowledged that Defendants would be directly benefitted by the success of the Debtor. Construction of the Hotel commenced soon thereafter.

38. Pursuant to the terms of the Promissory Note and the Loan Agreement expressly referenced therein, the Debtor was able to submit draw requests for payment by SFG of construction costs and related expenses throughout the construction process. Pursuant to the Loan Agreement, SFG expressly agreed to make disbursements to or on behalf of the Debtor against the Promissory Note.

39. Each draw request was to be submitted "at least five (5) business days prior to the date of the requested advance." Loan Agreement, §§ 5.01, 5.02. Timely funding of draw requests was of critical importance for the Debtor and to the construction of the Hotel. By April 2009, construction of the

Hotel was nearly complete, and the Debtor had hired and was already paying for the Hotel's management and critical staff. Without timely funding, management and staff could not be paid, the general contractor and subcontractors could not be paid, and construction would be halted.

40. Pursuant to the requirements of SFG, the draw request process generally occurred as follows: the Debtor or its general contractor would prepare a request for a funding draw, which it would forward to Broadlands Financial Group ("Broadlands"). Broadlands, which acted as the fund disbursement oversight manager utilized by SFG, would then verify and scrutinize each draw request. Once satisfied that the draw request was proper, Broadlands would send the Debtor a written approval document to be signed and returned to Broadlands. Broadlands would then submit the draw request and approval document to SFG for funding. Once the funds were disbursed to Broadlands by SFG, Broadlands would distribute the funds from each draw as originally requested by the general contractor.

41. On or about May 1, 2009, before the Hotel was completed, Silverton failed and was put in to receivership by the Federal Deposit Insurance Corporation. Upon information and belief, because SFG was a subsidiary of Silverton, this failure and/or receivership resulted in FDIC control over SFG and its assets. Upon information and belief, the Office of the Comptroller of the Currency subsequently formed Silverton Bridge Bank, NA, to be controlled by FDIC-R-Bridge. Assets of SFG and/or Silverton were transferred to Silverton Bridge Bank, NA. The FDIC-R-Bridge attempted to find a purchaser for Silverton, so that the bank could continue as an operating entity. When that effort failed, the FDIC-R-Bank was created for the marketing and sale of certain of assets of Silverton and/or its subsidiaries.

42.     Prior to the receivership of Silverton, the Debtor had submitted multiple draw requests which were usually funded (through the procedure detailed above in ¶ 36) by SFG within three to four weeks. However, starting with draw requests made in April 2009, and continuing after the receivership of Silverton, SFG failed to timely fund draw requests, taking seven to eleven weeks to fund those and subsequent draw requests.

43.     While waiting for the April 2009 draw requests to be funded, agents for the Debtor repeatedly communicated with their contacts within SFG, Broadlands Financial Group and with other contacts inside Silverton, Silverton Bridge Bank, NA, FDIC-R-Bank or FDIC-R-Bridge, regarding the April 2009 draw requests and the adverse effects the delayed funding was having on the construction process. During this time it was clear that one or more of the FDIC entities was in control of the funding process. On June 4, 2009, a full month after the April 2009 draw requests, Clayton Isom, in his capacity as CEO of the Debtor, sent an e-mail to James Tate with Silverton Bridge Bank, which explained that two subcontractors had already abandoned their work on the Hotel, and that other major subcontractors had represented their intent to likewise abandon the project if the draw requests were not immediately funded. By this time, the Debtor had suffered significant damages due to the delay in funding the April 2009 draw requests.

44.     Through its communications with various persons regarding the April 2009 draw requests, the Debtor became aware that FDIC-R-Bank or FDIC-R-Bridge were now in full control of the assets of SFG and were responsible for approving funding of the draw requests. For example, on June 5, Michael Harper with SFG e-mailed Clayton Isom to tell him that SFG was "in the process of funding your loan," but noted that the "FDIC has required that all guarantors provide completed personal financial statements using their format before they will approve funding." This request for personal

financial statements was clearly made at the behest of one or more of the FDIC entities, nearly five (5) full weeks after the April 2009 draw requests.

45.     The Guarantors provided the requested personal financial statements for the FDIC so that draw requests would not be further improperly delayed. However, delays in funding the draw requests under the Loan Agreement continued, to the detriment of the Debtor, and to the completion of the Hotel.

46.     Due to the Debtor's substantial challenges in communicating with its lender (and the subsequent assignees or receivers) during the construction process, and in obtaining timely funding in accordance with provisions of the Loan Agreement, completion of the Hotel was delayed to October 2009. The delay in the opening of the Hotel was costly to the Debtor, as the peak summer vacation and occupancy season for the Hotel had passed for 2009. Specifically, the Debtor, among other things, had to incur additional costs that were not accounted/budgeted for, such as paying interest for a longer period of time, having to pay fees to a management company that was already on the ground in anticipation of the Hotel's opening, and having to pay salaries of several managers who were hired in May 2009 in anticipation of opening during peak summer months.

47.     Throughout 2010 and early 2011, the Debtor engaged in discussions with FDIC-R-Bank representatives, to take into account the changed circumstances arising from Silverton's failure and consequential delays, and in an attempt to stabilize the Debtor's overall debt and repayment structure under the debt facility. On November 30, 2010, the FDIC-R-Bank announced to the Debtor that it was interested in selling the loan at a market-rate discount. Discussions with the FDIC-R-Bank continued into early 2011. In January 2011, the FDIC-R-Bank notified the Debtor that it was only interested in selling the loan at 100% of face value.

48.     Final discussions with the FDIC-R-Bank occurred on March 3, 2011. During that conversation, the FDIC-R-Bank informed the Debtor that the FDIC-R-Bank intended to sell the Debtor's loan as a small piece of a much larger package of hotel loans made by, or associated with, the failed Silverton Bank. On April 9, 2011, S2 Acquisition, an "opportunity fund" associated with Square Mile Capital Management in New York, New York, informed the Debtor in writing that S2 Acquisition had purchased the Debtor's loan from the FDIC-R-Bank. At the time S2 Acquisition acquired the right to enforce the Promissory Note, S2 Acquisition had notice that payments under the Promissory Note were overdue. S2 Acquisition purchased the Loan Agreement and the right to enforce the Promissory Note for approximately 80% of the outstanding balance owed on the Promissory Note.

49.     On April 26, 2011, the Debtor received a letter from S2 Acquisition which contained notice of S2 Acquisition's acceleration of the loan and demand for the entire principal balance of the loan, accrued interest, default interest and late fees. The letter provided the Debtor ten (10) days to pay these sums in full. Prior to this notice, the Debtor had never been put on Notice of Default.

50.     S2 Acquisition posted the real property associated with the Hotel for a June 2011 foreclosure. The Debtor continued an effort to negotiate with S2 Acquisition for reinstatement of the loan, but these efforts ultimately proved unsuccessful.

c.      **Count One - Breach of Contract**

**Against S2 Acquisition, LLC; Federal Deposit Insurance Corporation as Receiver for Silverton Bank N.A.; Federal Deposit Insurance Corporation as Receiver for Silverton Bridge Bank, N.A., and Specialty Finance Group, LLC**

51.     Defendants incorporate paragraphs 34-47 as if fully set forth herein.

52. The Guaranty Agreement incorporated the Loan Documents and the performance of those documents into the obligations found in the Guaranty Agreement.

53. SFG was contractually obligated to make timely disbursements to the Debtor pursuant to draw requests submitted under the Loan Agreement entered into between Debtor and SFG in April, 2008. Despite properly submitted draw requests, SFG failed to timely make such disbursements, causing injury and damage to the Debtor. With the obligations under the Loan Documents incorporated into the Guaranty Agreement, Defendants likewise suffered damages.

54. The Loan Agreement expressly provides that all covenants and agreements contained in the Loan Agreement shall bind and inure to the benefit of each party's respective successors, successors-in-title, and assigns. Loan Agreement, § 8.12. Therefore, by the express language of the Loan Agreement, the covenants and agreements made by SFG transferred and are binding upon S2 Acquisition.

55. FDIC-R-Bank, during its respective period of receivership and ownership or control of the Promissory Note and Loan Agreement, also failed to comply with the contractual obligations of the Loan Agreement by timely funding the draw requests. Its actions caused injury and damages to the Debtor. With the obligations under the Loan Documents incorporated into the Guaranty Agreement, Defendants likewise suffered damages.

56. FDIC-R-Bridge, during its respective period of receivership and ownership or control of the Promissory Note and Loan Agreement, likewise failed to comply with the contractual obligations of the Loan Agreement by timely funding the draw requests. Its actions have likewise caused injury and damages to the Debtor. With the obligations under the Loan Documents incorporated into the Guaranty Agreement, Defendants likewise suffered damages.

57.     At the time of the April 2009 draw requests and the resulting failure to timely fund such requests, the Debtor had fully complied with the contractual obligations of the Promissory Note and Loan Agreement. Therefore, the breach attributable to the Plaintiff occurred prior to any purported breach by the Debtor or Defendants.

58.     Plaintiff has taken the Promissory Note and Loan Agreement subject to the defenses and rights that the Debtor is able to assert against SFG, FDIC-R-Bank, and FDIC-R-Bridge.  Plaintiff's breach of the Promissory Note and Loan Agreement has directly caused Defendants injuries, for which Defendants hereby sue.

d.      **Count Two – Breach of Contract Asserted by Defendants as Third Party Beneficiaries**

**Against S2 Acquisition, LLC; Federal Deposit Insurance Corporation as Receiver for Silverton Bank N.A.; Federal Deposit Insurance Corporation as Receiver for Silverton Bridge Bank, N.A., and Specialty Finance Group, LLC**

59.     Defendants incorporate paragraphs 34-55 as if fully set forth herein.

60.     Defendants were third party beneficiaries to the Loan Documents.  Failure by Plaintiff, FDIC-R-Bank, FDIC-R-Bridge, and SFG to perform their obligations under the Loan Documents directly caused Defendants damages, for which Defendants hereby sue.

e.      **Attorney Fees and Costs**

61.     Pursuant to GA. CODE ANN. § 13-6-11, Defendants specifically plead for its expenses of litigation and attorney fees expended in pursuing this matter.

## D.  Prayer

For these reasons, Defendants CLAYTON ISOM and RASHID AL-HMOUD ask the Court to enter the following:

a. Render judgment that Plaintiff take nothing;

b. Dismiss Plaintiff's suit with prejudice;

c. Assess costs against Plaintiff;

d. Award Defendants attorney fees;

f. Render judgment for Defendants against Plaintiff for actual damages, attorney fees, and interest;

g. Award Defendants all other relief the Court deems appropriate.

Respectfully submitted,

/s/ Dustin R. Burrows
DUSTIN R. BURROWS
State Bar No. 24048375
DENNIS R. BURROWS
State Bar No. 03471500
WILL C. GRIFFIS
State Bar No. 24064159
McCLESKEY, HARRIGER, BRAZILL
     & GRAF, L.L.P.
P.O. Box 6l70
Lubbock, Texas 79493-6l70
(806) 806-687-0630
Fax:  (806) 796-7365

ATTORNEYS FOR CLAYTON ISOM and RASHID AL-HMOUD

## CERTIFICATE OF SERVICE

      I hereby certify that on the 2nd day of September, 2011, I electronically filed the foregoing document with the clerk of the court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court. The electronic filing system sent a "Notice of Electronic Filing" to the listed parties, all of whom have consented to accept this Notice as service of this document by electronic means.

                                                /s/ Dustin R. Burrows

Shari L. Heyen
Greenberg Traurig, LLP
2000 Louisiana, Suite 1700
Houston, Texas 77002
heyens@gtlaw.com